UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ERIC M. SISCO,<br>Petitioner,<br>v.<br>M. McDONALD,<br>Respondent. | No. 2:12-cv-01804 JAM AC<br><br><u>FINDINGS AND RECOMMENDATIONS</u> |

Petitioner is a state prisoner proceeding pro se with an application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The action proceeds on the amended petition filed November 28, 2012, ECF No. 1, which challenges petitioner's 2010 conviction for attempted murder and related offenses. Respondent has answered, ECF No. 14, and petitioner has filed a traverse, ECF No. 20.

BACKGROUND

Petitioner was charged in two separate complaints with attempted murder and related offenses arising from two separate shooting incidents, both of which took place in Sacramento County in 2008. After the superior court granted the prosecution's motion to consolidate the cases, an amended information was filed that contained all charges related to both incidents. CT

5, 19-24.[1]  On the first day of trial, the defense moved to sever.  RT 16.[2]  The motion was denied.  RT 22.

The evidence at trial established the following facts:

On July 7, 2008, Jamari McMahan answered the cell phone belonging to his girlfriend, Chanell Wade, which began to ring as she returned to their apartment after being out all night. Petitioner's photograph was displayed as the caller.  The caller identified himself as Wade's husband and argued with McMahan, who had not realized that Wade was married.  Petitioner called a second time shortly thereafter and told McMahan to come outside.  Wade appeared frightened and warned McMahan that petitioner "plays with guns."  McMahan looked downstairs and saw two men standing by his car.  Petitioner then ran up the stairs toward the apartment, as McMahon locked the doors.  Petitioner banged on the front door, broke out the window next to the door with a semiautomatic gun, stuck his arm through the broken window, and began firing at McMahan.  McMahan ran to a back bedroom and jumped out a second story window to escape.

On September 28, 2008, Chaynte Salazar and Davela Cannon argued about ending their dating relationship.  That night, Salzar and her sisters pelted Cannon's house with eggs and set off fireworks outside.  Salazar called petitioner, who is her brother-in-law, and asked him to fight Cannon. (Salzar testified under a grant of immunity.)  She and one of her sisters drove petitioner to Cannon's house.  When Cannon approached petitioner, petitioner shot him in the chest and leg. Petitioner then fired at the husband of Salazar's sister.  Petitioner escaped in a waiting vehicle.

A criminalist testified that shell casings from the two crime scenes were fired by the same gun.

The defense presented the testimony of Jaunisha King, petitioner's sister-in-law and friend, that she had visited petitioner at his home in Sparks, Nevada, on the Fourth of July in 2008.  Petitioner had stayed there for three or four days.  Petitioner had also been at his Nevada house throughout mid-September of 2008.

On March 25, 2011, the jury found petitioner guilty of the assault and attempted murder of

---

[1] "CT" refers to the Clerk's Transcript on Appeal.
[2] "RT" refers to the Reporter's Transcript on Appeal.

Jamari McMahan, the attempted murder of Davela Cannon, and being a felon in possession of a firearm in relation to both incidents. The jury also found that petitioner had personally and intentionally discharged a firearm on both occasions. RT-526-29. On May 7, 2010, petitioner was sentenced to a determinate term of 30 years and 4 months in addition to an indeterminate term of 25 years to life. RT 544.

Petitioner appealed, and the California Court of Appeal affirmed the conviction on October 19, 2011. Lodged Doc. 4. The California Supreme Court denied review on January 10, 2012. Lodged Doc. 6.

Petitioner filed a habeas petition in the Sacramento County superior court on July 10, 2012, challenging the gun use enhancement. Lodged Doc. 7. The petition was denied on August 4, 2012. Lodged Doc. 8. Petitioner did not further pursue state habeas relief.

The initial federal petition, dated July 1, 2012, was docketed on July 9, 2012. ECF No. 1. An amended petition was filed on November 28, 2012. ECF No. 8. Respondent answered on the merits on April 22, 2013. ECF No. 14. Respondent asserts no procedural defenses. Id. Petitioner filed a traverse on August 7, 2013. ECF No. 20.

<div style="text-align:center">STANDARDS GOVERNING HABEAS RELIEF UNDER THE AEDPA</div>

28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), provides in relevant part as follows:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The statute applies whenever the state court has denied a federal claim on its merits, whether or not the state court explained its reasons. Harrington v. Richter, 131 S. Ct. 770, 785 (2011). State court rejection of a federal claim will be presumed to have been on the merits

absent any indication or state-law procedural principles to the contrary. Id. at 784-785 (citing Harris v. Reed, 489 U.S. 255, 265 (1989) (presumption of a merits determination when it is unclear whether a decision appearing to rest on federal grounds was decided on another basis)). "The presumption may be overcome when there is reason to think some other explanation for the state court's decision is more likely." Id. at 785.

The phrase "clearly established Federal law" in § 2254(d)(1) refers to the "governing legal principle or principles" previously articulated by the Supreme Court. Lockyer v. Andrade, 538 U.S. 63, 71-72 (2003). Clearly established federal law also includes "the legal principles and standards flowing from precedent." Bradley v. Duncan, 315 F.3d 1091, 1101 (9th Cir. 2002) (quoting Taylor v. Withrow, 288 F.3d 846, 852 (6th Cir. 2002)). Only Supreme Court precedent may constitute "clearly established Federal law," but circuit law has persuasive value regarding what law is "clearly established" and what constitutes "unreasonable application" of that law. Duchaime v. Ducharme, 200 F.3d 597, 600 (9th Cir. 2000); Robinson v. Ignacio, 360 F.3d 1044, 1057 (9th Cir. 2004).

A state court decision is "contrary to" clearly established federal law if the decision "contradicts the governing law set forth in [the Supreme Court's] cases." Williams v. Taylor, 529 U.S. 362, 405 (2000). A state court decision "unreasonably applies" federal law "if the state court identifies the correct rule from [the Supreme Court's] cases but unreasonably applies it to the facts of the particular state prisoner's case." Id. at 407-08. It is not enough that the state court was incorrect in the view of the federal habeas court; the state court decision must be objectively unreasonable. Wiggins v. Smith, 539 U.S. 510, 520-21 (2003).

Review under § 2254(d) is limited to the record that was before the state court. Cullen v. Pinholster, 131 S. Ct. 1388, 1398 (2011). The question at this stage is whether the state court reasonably applied clearly established federal law to the facts before it. Id. In other words, the focus of the § 2254(d) inquiry is "on what a state court knew and did." Id. at 1399. Where the state court's adjudication is set forth in a reasoned opinion, §2254(d)(1) review is confined to "the state court's actual reasoning" and "actual analysis." Frantz v. Hazey, 533 F.3d 724, 738 (9th Cir. 2008) (en banc). A different rule applies where the state court rejects claims summarily,

4

1  without a reasoned opinion.  In Richter, supra, the Supreme Court held that when a state court
2  denies a claim on the merits but without a reasoned opinion, the federal habeas court must
3  determine what arguments or theories may have supported the state court's decision, and subject
4  those arguments or theories to § 2254(d) scrutiny.  Richter, 131 S. Ct. at 786.

5  Relief is also available under AEDPA where the state court predicated its adjudication of
6  a claim on an unreasonable factual determination.  Miller-El v. Dretke, 545 U.S. 231, 240 (2005);
7  Taylor v. Maddox, 366 F.3d 992, 999-1001 (9th Cir.), cert. denied, 543 U.S. 1038 (2004).  The
8  statute explicitly limits this inquiry to the evidence that was before the state court.  28 U.S.C. §
9  2254(d)(2).

10  To prevail in federal habeas proceedings, a petitioner must establish the applicability of
11  one of the § 2254(d) exceptions and also must also affirmatively establish the constitutional
12  invalidity of his custody under pre-AEDPA standards.  Frantz v. Hazey, 533 F.3d 724.  There is
13  no single prescribed order in which these two inquiries must be conducted.  Id. at 736-37.  The
14  AEDPA does not require the federal habeas court to adopt any one methodology.  Lockyer v.
15  Andrade, 538 U.S. at 71.

## DISCUSSION

### I.   Petitioner's Allegations and the Relevant State Court Record

Petitioner's federal habeas petition presents a single claim: that his due process rights were violated by joinder of the charges related to the two separate shooting incidents.  ECF No. 8 at 4.  This claim is based on the record of the trial proceedings.

In denying the motion to sever, the superior court ruled as follows:

> The … issue is whether or not withstanding their previous joinder, the charges from the July and September incident[s] should not be severed such that separate trials would be given to Mr. Sisco on the various charges stemming from the two assaults. At the outset the Court notes that where cases have been properly joined, the burden is on the party seeking severance to clearly establish that there is a substantial danger or prejudice requiring the charges be tried separately. I am citing People v[.] Soper, 2009 case, 45 Cal.4th 759 at 773. Hence it is the defendant's burden to show und[ue] prejudice [arising from] the continued joinder of the two incidents.
>
> As directed in Soper, this Court examines the following factors in resolving this motion to sever. First, the cross-admissibility of the

evidence and hypothetical separate trials.

As noted in Soper, "If the evidence underlying the charges in question would be cross-admissible, that factor alone is normally sufficient to dispel any suggestion of prejudice and to justify a trial court's refusal to sever properly joined charges." That's at page 775.

In the event the evidence is determined not to be cross-admissible, Soper then directs this Court to examine the following additional factors:

First, whether some of the charges are particularly likely to inflame the jury against the defendant. Second, whether another weak case has been joined with a strong case or another weak case so that the totality of the evidence may alter the outcome as to some or all of the charges. Or third, whether one of the charges but not the other is a capital offense or the joinder of the charges converts the matter into a capital case.

With the above three factors in mind, the Court then balances the potential ... prejudice to the defendant from a joint trial against the benefits to the state to include consideration of the systemic economies of joint trials.

Under Soper the first issue then becomes whether there exists cross-admissibility of evidence at hypothetical separate trials.

In the current case the Court finds that the facts of the July and September assaults would be relevant to and cross-admissible in hypothetical separate trials. The defendant's intent in each of the two incidents is at issue and the People would no doubt seek to admit "other crimes evidence" under Evidence Code Section 1101(b) to prove that intent.

Therefore, provided sufficient similarities exist, evidence underlying the July shooting would be admissible in a trial of the September incident, as would evidence of the September shooting in a trial of the July incident, on the theory that the factual similarities between the two cases demonstrate that in each the perpetrator harbored a similar intent to kill.

In examining the information available to this Court at the present time, which includes the record of the preliminary hearing and the factual statement provided by each counsel in their accompanying trial briefs, this Court finds the following similarities between the July and September shootings:

One, the presence of an upset or insulted woman. Two, with a pre-existing relationship or connection to the defendant. Three, who becomes embroiled in an argument with the victim. Four, that argument is over perceived insult to or about the woman by the victim. Five, the defendant subsequently appears on the scene shortly after the argument. Six, the defendant's appearance is followed by an immediate and unprovoked confrontation between

> the victim and the defendant. Seven, the victim is either shot or shot at by the defendant. Eight, the defendant is identified by an on scene eyewitness as the shooter. And nine, forensic evidence links the shell casings found at each of the two crime scenes to the same weapon.
>
> Given the similarities in time, place, manner, and method of each of the two shootings and in light of the standard articulated in People v[.] Ewoldt, 7 Cal.4th 380, for the admissibility of other crimes evidenced, the facts of both shootings would be cross-admissible on the issue of intent in hypothetical separate trials of each of the incidents.
>
> Assuming for [the] sake of argument that this Court's analysis is incorrect, such that evidence underlying the charges would not be cross-admissible in hypothetical separate trials on the issue of intent, the Court now examines the three additional factors identified by the supreme court in Soper.
>
> First, whether each of the two cases is similar in nature and equally egregious such that neither when compared to the other is likely to unduly inflame a jury against the defendant.
>
> On this particular point this Court finds that the charges surrounding each shooting are essentially a mirror image of the other. Neither incident has generated a charge which is not alleged in the other incident. Second, the Court looks to whether a weak case has been joined with a strong case or another weak case so that the totality of the evidence does not alter the outcome as to some or all of the charges.
>
> Here the court finds that the facts underlying each of the offenses are essentially equal in strength and persuasion. Consequently the fear that proof of a stronger incident will influence or overwhelm the jury's consideration of a weaker case is not a realistic concern.
>
> The court notes that eyewitness testimony supports the allegation that the defendant was the shooter in each of the two incidents.
>
> Finally whether this is a case in which one of the charges involves a capital offense and the other does not, and whether the presence of one of the charged offenses converts the second into a capital offense is not at issue, the answer to both these inquiries is simply no.
>
> In conclusion, this Court notes that Soper found that severance would deny the state substantial benefits of both efficiency and congregation of traditional resources afforded under [ ] Section 954. Therefore, based on the foregoing analysis and in light of the holding of the California Supreme Court in the Soper decision, defendant's motion to sever is denied, as the defendant has failed to carry his burden of establishing the joinder of the July and September incident[s] will unduly prejudice his ability to obtain a fair trial.

RT 18-22.

II. <u>The Clearly Established Federal Law</u>

Due process requires that criminal trials "comport with prevailing notions of fundamental fairness." <u>California v. Trombetta</u>, 467 U.S. 479, 485 (1984). No U.S. Supreme Court case addresses the application of this general principle to the joinder of counts.[3]

III. <u>The State Court's Ruling</u>

This claim was exhausted on direct appeal. Because the California Supreme Court denied discretionary review, the opinion of the California Court of Appeal constitutes the last reasoned decision on the merits and is the subject of habeas review in this court. See <u>Ylst v. Nunnemaker</u>, 501 U.S. 797 (1991); <u>Ortiz v. Yates</u>, 704 F.3d 1026, 1034 (9th Cir. 2012).

The appellate court ruled as follows:

> When there is no dispute that charges have been properly joined in a single information, "[t]he burden is on the party seeking severance to clearly establish that there is a substantial danger of prejudice requiring that the charges be separately tried. (<u>People v. Ruiz</u> (1988) 44 Cal.3d 589, 605; <u>People v. Balderas</u> (1985) 41 Cal.3d 144, 173.)" (<u>People v. Soper</u> (2009) 45 Cal.4th 759, 773–774 (<u>Soper</u>).)
>
> On appeal, "[a] defendant, to establish error in a trial court's ruling declining to sever properly joined charges, must make a "'clear showing of prejudice to establish that the trial court abused its discretion ....'" (<u>Alcala [v. Superior Court</u> (2008)] 43 Cal.4th 1205, 1220, and cases cited.) A trial court's denial of a motion to sever properly joined charged offenses amounts to a prejudicial abuse of discretion only if that ruling """falls outside the bounds of reason."""" (<u>Ibid.</u>) We have observed that 'in the context of properly joined offenses, "a party seeking severance must make a stronger showing of potential prejudice than would be necessary to exclude other crimes evidence in a severed trial.'" (<u>Id.</u>, at p. 1222, fn. 11, quoting <u>People v. Arias</u> (1996) 13 Cal.4th 92, 127 (<u>Arias</u>).)" (<u>Soper</u>, <u>supra</u>, 45 Cal.4th at p. 774.)
>
> "In determining whether a trial court abused its discretion under section 954 in declining to sever properly joined charges, 'we consider the record before the trial court when it made its ruling.'

---

[3] In the context of joined defendants, the Supreme Court has noted that "[i]mproper joinder does not, in itself, violate the Constitution. Rather, misjoinder would rise to the level of a constitutional violation only if it results in prejudice so great as to deny a defendant his Fifth Amendment right to a fair trial." <u>United States v. Lane</u>, 474 U.S. 438, 446 n. 8 (1986). The Ninth Circuit has described the latter sentence as dicta that does not constitute "clearly established federal law" for purposes of § 2254(d)(1). <u>Collins v. Runnels</u>, 603 F.3d 1127, 1132 (9th Cir.), <u>cert. denied</u>, 131 S.Ct. 243 (2010).

(<u>Alcala</u>, <u>supra</u>, 43 Cal.4th 1205, 1220.) Although our assessment 'is necessarily dependent on the particular circumstances of each individual case, ... certain criteria have emerged to provide guidance in ruling upon and reviewing a motion to sever trial.' (<u>Frank [v. Superior Court</u> (1989)] 48 Cal.3d 632, 639.)

"First, we consider the cross-admissibility of the evidence in hypothetical separate trials. (<u>Alcala</u>, supra, 43 Cal.4th 1205, 1220.) If the evidence underlying the charges in question would be cross-admissible, that factor alone is normally sufficient to dispel any suggestion of prejudice and to justify a trial court's refusal to sever properly joined charges. (<u>Id.</u>, at p. 1221.)" (<u>Soper</u>, supra, 45 Cal.4th at pp. 774–775.)

We agree with the trial court's analysis and conclusion on defendant's motion to sever charges stemming from the July and September shootings. Evidence Code section 1101, subdivision (b), allows for "admission of evidence that a person committed a crime ...when relevant to prove some fact (such as motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident... ) other than his or her disposition to commit such an act." Under Evidence Code section 1101, the People were entitled to admit evidence of both shootings to establish intent to kill in prosecuting the attempted murder charged for each of the incidents. "In order to be admissible to prove intent, the uncharged misconduct must be sufficiently similar to support the inference that the defendant "'probably harbor[ed] the same intent in each instance." [Citations.]'" (<u>People v. Ewoldt</u> (1994) 7 Cal.4th 380, 402, quoting <u>People v. Robbins</u> (1988) 45 Cal.3d 867, 879.)

As the trial court noted, the preliminary hearing provided evidence of multiple similarities between the shootings allowed for cross-admissibility of the evidence. These distinctive characteristics included (1) an "upset or insulted" woman, (2) who had a romantic relationship with the victim, (3) the relationship was in jeopardy of ending, (4) an argument ensued "over perceived insult to or about the woman by the victim," (5) defendant's arrival at the scene shortly after the victim argued with his girlfriend, (6) defendant's arrival immediately resulted in an angry confrontation with the victim, (7) the victim is shot or shot at by the defendant, and (8) the defendant is identified by an eyewitness who was at the scene. [fn. omitted.]  These similarities allowed cross-admissibility of the evidence of both shootings and amply supported the trial court's decision to deny the motion to sever. (<u>Soper</u>, <u>supra</u>, 45 Cal.4th at pp. 774–775.)

Defendant takes issue with the trial court's phrasing of some of the similarities between the two shooting incidents. For example, defendant attempts to distinguish the "bad conversation" between Wade and McMahan as something different than an "argument" between Cannon and Salazar. Defendant concedes that both women were "upset," but asserts that only Salazar was also "insulted." Defendant also asserts that the exact timing of defendant's arrival with respect to the "bad conversation" between Wade and McMahan did not match the trial court's description of defendant's

9

arrival immediately after the argument. We reject these as distinctions that do not undermine the trial court's findings that both incidents involved a significant number of the same defining characteristics. These similarities sufficed to show the evidence of the two shootings was cross-admissible and thus warranted a single trial on the charges stemming from the two shootings.

Even if the evidence had not been cross-admissible in hypothetical separate trials, we would nonetheless affirm the trial court's denial of the motion to sever based on the consideration of "'whether the benefits of joinder were sufficiently substantial to outweigh the possible "spill-over" effect of the "other-crimes" evidence on the jury in its consideration of the evidence of defendant's guilt of each set of offenses.' [Citations.]" (Soper, supra, 45 Cal.4th at p. 775.) As the Soper court instructed, "In making that assessment, we consider three additional factors, any of which—combined with our earlier determination of absence of cross-admissibility— might establish an abuse of the trial court's discretion: (1) whether some of the charges are particularly likely to inflame the jury against the defendant; (2) whether a weak case has been joined with a strong case or another weak case so that the totality of the evidence may alter the outcome as to some or all of the charges; or (3) whether one of the charges (but not another) is a capital offense, or the joinder of the charges converts the matter into a capital case. (Arias, supra, 13 Cal.4th 92, 127; see also Alcala, supra, 43 Cal.4th 1205, 1220–1221, and cases cited.) We then balance the potential for prejudice to the defendant from a joint trial against the countervailing benefits to the state." (Soper, supra, 45 Cal.4th at p. 775.)

Neither the July nor the September shooting was inherently more inflammatory than the other. Even while attempting to distinguish the shootings, defendant fails to identify one shooting as more inflammatory or sensational.

The evidence in support of both sets of charges was strong. In each instance, an eyewitness identified defendant as the shooter. Although defendant attempts to cast doubt on McMahan's initial description of defendant as taller and bigger, McMahan based his identification on having gotten a "good look" at defendant. Similarly, defendant was shown to be the shooter in the second incident by the person who drove him to Cannon's house for the confrontation. The identifications were solid and unequivocal. Defendant does not challenge the strength of the evidence showing that the shooting occurred or that the shooter attempted to kill the victims. In short, the evidence in support of each of the shootings was strong and neither shooting required bolstering evidence pertaining to the other incident.

Finally, this is not a capital case. Thus, the third factor that might weigh in favor of severance does not apply here. (See Soper, supra, 45 Cal.4th at p. 775.) Accordingly, we conclude that the trial court did not err in denying defendant's motion to sever. The evidence of the two shootings was cross-admissible, and no other factor

10

1  compelled severance of the two sets of charges.

2 Lodged Doc. 4 at 9-14.

3     IV.    Objective Reasonableness Under § 2254(d)

4 There can be no objectively unreasonable application of federal law within the meaning of the AEDPA where the U.S. Supreme Court has not clearly established a governing standard. Early v. Packer, 537 U.S. 3, 10 (2002) (per curiam); Wright v. Van Patten, 552 U.S. 120, 126 (2008). The Supreme Court has never held that a trial court's failure to provide separate trials on different charges implicates a defendant's right to due process. See Collins v. Runnels, 603 F.3d 1127, 1132 (9th Cir.), cert. denied, 131 S.Ct. 243 (2010) (denying challenge to joinder of defendants for lack of clearly established federal law). Petitioner has not cited, and the court's independent research has not found, any Supreme Court case considering a claim that the misjoinder of counts arising from different incidents violates due process. Accordingly, § 2254(d)(1) bars relief on this claim.

Petitioner's claim would fail even without reference to AEDPA standards. On habeas review of a state conviction, the Ninth Circuit has held that

> the propriety of a consolidation rests within the sound discretion of the state trial judge. The simultaneous trial of more than one offense must actually render petitioner's state trial fundamentally unfair and hence, violative of due process before relief pursuant to 28 U.S.C. § 2254 would be appropriate.

Featherstone v. Estelle, 948 F.2d 1497, 1503 (9th Cir. 1991) (citation omitted). "This circuit recognizes potential due process concerns when a poorly-supported count is combined with one that is well supported." Park v. California, 202 F.3d 1146, 1150 (9th Cir.), cert. denied, 531 U.S. 918 (2000). Where the evidence on all counts is strong, however, and especially where it includes percipient witness testimony as to both charges (or sets of charges), there are no such concerns. See Fields v. Woodford, 309 F.3d 1095, 1110 (9th Cir. 2002). That is the situation here.

Cross-admissibility of evidence is key to the due process analysis. The Ninth Circuit has found joinder violative of due process where the state "virtually concede[d] the absence of cross-admissibility." Bean v. Calderon, 163 F.3d 1073, 1086 (9th Cir. 1998), cert. denied, 528 U.S.

11

922 (1999). Here, to the contrary, the state court ruled that the evidence would be cross-admissible at separate trials under the California Evidence Code. This court may not disturb that conclusion of state law. Bradshaw v. Richey, 546 U.S. 74, 76 (2005) (state court's ruling on state law issue binding on federal habeas court).

Given the independent strength of the evidence on the various charges, the record in this case does not support a conclusion that the joinder had a substantial and injurious effect or influence on the jury's verdict. Absent such a showing, petitioner cannot prevail. Sandoval v. Calderon, 241 F.3d 765, 772 (9th Cir. 2000), cert. denied, 534 U.S. 943 (2001).

## CONCLUSION

For all the reasons set forth above, IT IS RECOMMENDED that petitioner's application for federal habeas corpus be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." If petitioner files objections, he shall also address whether a certificate of appealability should issue and, if so, why and as to which issues. A certificate of appealability may issue under 28 U.S.C. § 2253 "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(3). Any response to the objections shall be filed and served within fourteen days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: November 21, 2014

_____
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE